UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CASE NO. 4:10-CV-00079-TBR

**CONCHI SIERRA**                                                                                    **PLAINTIFF**

v.

**CRAIG WILLIAMSON,** *ET AL.*                                                                  **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant Morgan Stanley Trust National Association's *Daubert* motion to exclude the testimony of the Plaintiff's expert witnesses. Def.'s *Daubert* Mot., Docket Number ("DN") 90. That motion was joined by Defendant Craig Williamson. Def.'s Resp., DN 100. The Plaintiff has responded. Pl.'s Resp., DN 113. Morgan Stanley Trust National Association has replied. Def.'s Reply, DN 116. This matter is now ripe for adjudication. Having considered the matter and being fully advised, the Defendants' motion is **DENIED** with leave to re-file after the Plaintiff's experts are deposed.

**I.**

To resolve the present motion the Court must determine whether testimony offered by the Plaintiff's expert witnesses is admissible under Federal Rule of Evidence 702. The Defendants challenge this testimony on two fronts. First, they argue that the proposed experts are unqualified to render the opinions offered. Second, even if qualified, the Defendants claim that the experts' opinions are inadmissible legal conclusions that will not aid the trier of fact.

On the first issue, it appears to the Court that the experts are qualified. On the second issue, the Court declines to reach the substance of the Defendants' motion until the experts are deposed. The responses the experts give in their depositions will better allow the Court to determine whether they seek to testify in the form of inadmissible legal conclusions.

1

Finally, to the extent that the Defendants seeks to exclude Homer Parrent's opinions interpreting the various Powers of Attorney and trust instruments, the Court also declines to reach the substance of the Defendants' argument until he is deposed.

## II.

This case involves allegations of undue influence and breaches of fiduciary duties in the amendment and administration of the Sara Loving Sutherland Revocable Trust ("SLS Trust"). The Court provides the following limited statement of facts by way of background only. Discovery is ongoing, and the facts may change as it is completed.

The SLS Trust was created in 1991 by Sara Loving Sutherland ("Sara"). Sara severed as the trustee of the SLS Trust, which designated her daughter, Nan Loving Sierra, and her granddaughter, Plaintiff Conchi Sierra ("Conchi"), as primary beneficiaries. Although Sara amended the SLS Trust on multiple occasions, Conchi remained a named, primary beneficiary of the trust until 2004. Around that time it appears that Sara was diagnosed with Alzheimer's Disease, began having trouble caring for her own daily needs, and was no longer able to fulfill her duties as trustee. In July 2004, Sara resigned as trustee and appointed her nephew, Craig Williamson ("Craig"), and Morgan Stanley Trust National Association ("MSTNA") to serve as co-trustees in her stead. In addition to making Craig a co-trustee, Sara executed a Power of Attorney naming Craig her attorney-in-fact. In that position, Craig moved Sara into an assisted-living facility in Bowling Green, Kentucky in September 2004. In December 2004, Sara amended the SLS Trust for a fifth time. It is alleged that Craig unduly influenced Sara into making this amendment, which named Craig and his siblings as beneficiaries of 60 percent of the SLS Trust and substantially reduced Conchi's share.

Throughout 2005, various factions of the Sierra and Williamson families moved Sara

between Florida and Kentucky and housed her in a mix of professional care facilities and personal residences. During this time several Powers of Attorney were revoked or created, shifting power over Sara's affairs between these factions. Craig eventually regained authority over Sara's affairs through a Power of Attorney executed on October 15, 2005. Shortly thereafter, Sarah was admitted to Wellington Parc, a facility in Owensboro, Kentucky specializing in the full-time care of Alzheimer's patients. On May 1, 2006, while living at Wellington Parc, Sara amended the trust for a final time. This amendment named Craig and his siblings as beneficiaries of 100 percent of the SLS Trust and other portions of Sara's estate, save for two specific devises, one of which was a $200,000 bequest to Conchi.

Conchi also alleges that during the course of the foregoing events Craig caused gifts of money and property to be made to himself and other family members and friends from Sara's personal assets and the assets of the SLS Trust, breaching the prohibition against self-dealing. Conchi alleges that MSTNA was at all times aware of and acquiesced to Craig's actions, thereby breaching several fiduciary duties that it owed to the SLS Trust as co-trustee.

In total, Conchi alleges that Craig unduly influenced Sara for the purposes of having her alter her estate planning documents for the benefit of himself and his family. Conchi claims that Craig's actions violated multiple fiduciary duties he owned to the SLS Trust as a trustee and that MSTNA also breach several fiduciary duties by either approving of or acquiescing to Craig's actions.

For the purposes of prosecuting the alleged breaches of fiduciary duties, Conchi retained two expert witnesses. W. Gregg Noble ("Noble") was retained to review the underlying facts and to determine whether Craig or MSTNA breached any fiduciary duty they owed to the SLS Trust by virtue of their positions as co-trustees. Noble concluded that the Defendants' actions

3

breached ten different fiduciary duties. Noble Expert Report, DN 90-2, p. 16. Homer Parrent ("Parrent") was retained for two other reasons. First, he was asked to review the various trust documents and Powers of Attorney in order to determine whether Craig was granted the authority to direct MSTNA to make certain disbursements from the SLS Trust. Parrent Expert Report, DN 90-3, p. 3. Second, Parrent was asked to evaluate whether MSTNA "is liable for breaches of trust committed or induced by Craig Williamson." *Id.* Parrent concluded that Craig had no authority to direct MSTNA to make the requested distributions and that by not exercising its power as co-trustee to prohibit Craig's actions, MSTNA is liable for the loss of trust assets. *Id.* at pp. 4, 5.

The Defendants now move to exclude Noble and Parrent pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702.

### III.

Federal Rule of Evidence 702 governs the admissibility of testimony offered by expert witnesses. Under that rule, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:"

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Rule 702 rule was amended in 2000 to address the Supreme Court's seminal opinion in *Daubert*, and its progeny, including *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). *See* Fed. R. Evid. 702 (advisory committee notes to 2000 Amendments). "The amendment affirms the trial court's role as gatekeeper and provides some general standards that the trial court must use to assess the reliability and helpfulness of proffered expert testimony."

*Id.* Among these "general standards" is Federal Rule of Evidence 104(a), which provides that "[t]he court must decide any preliminary question about whether a witness is qualified . . . ." Under Rule 104(a), a witness's proponent must prove that the witness is qualified by a preponderance of the evidence. *See* Fed. R. Evid. 702 (advisory committee notes to 2000 Amendments); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). Accordingly, when read in conjunction, Rules 104(a) and 702 require that a party seeking to present expert testimony must first show by a preponderance of the evidence that the expert is qualified by "knowledge, skill, experience, training, or education."

Subsequent to finding that an expert is qualified, the Court must still exercise its role as gatekeeper in order to determine "whether a proposed expert's testimony is admissible based on whether the testimony is both relevant and reliable." *Rose v. Truck Centers, Inc.*, 388 F. App'x 528, 533 (6th Cir. 2010) (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007)); *see Daubert*, 509 U.S. at 589. When making that determination about a particular expert, the judge must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and [ ] whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592.

Only qualified experts whose testimony is both relevant and reliable are admissible under Rule 702.

**IV.**

The Defendants first challenge the qualifications of the Plaintiff's experts. Upon review, it appears that the Plaintiff has shown by a preponderance of the evidence that her experts are qualified.

### A. Qualifications of W. Gregg Noble

W. Gregg Noble is currently a shareholder in an accounting firm in Florida. He received a Master's in Business Administration from the University of North Florida and is licensed as a Certified Public Accountant ("CPA") and an investment advisor, having passed the Uniform Investment Advisor Law Examination ("Series 65"). *See* Noble Expert Report, DN 90-2, p. 21.

Prior to joining the accounting firm, Noble served for seven years as an assistant vice president in the trust department of Florida National Bank. Noble Aff., DN 113-2, ¶ 2. In that role, he managed the estate tax unit of the trust department, served on the bank's statewide trust administrative committee, and was a member of its statewide probate counsel, which managed the administration of trusts and estates for the bank's decedent clients. *Id.* ¶ 3. Noble primarily worked with trust officers employed by the banks, which, according to him, "required knowledge of all tax matters relative to trust and estates as well as trust and estate administrative knowledge." *Id.* ¶ 4.

Upon leaving the bank, Noble began working as a CPA. That work, which Noble has performed for eighteen years, focuses on "trust taxation as well as investment advisory work," and requires him know trust and estate administrative matters and procedures in order to advise his clients who serve as trust fiduciaries. *Id.* ¶ 5. Noble also currently serves as trustee of six separate share trusts and is the named successor trustee for several of his clients' revocable trusts. *Id.* ¶ 6. Finally, he chairs the accounting firm's trust administrative committee, which oversees and supports "the administration of trusts and estates for those shareholders [who] have fiduciary responsibilities, but limited experience with the same." *Id.* ¶ 7.

Despite this background, the Defendants claim that Noble is unqualified because his experience does not fit the opinions he seeks to offer or the facts of this case. In particular,

MSTNA claims Noble is unqualified because he "does not have any experience as a corporate trust officer or administering a trust on behalf of a corporate trustee such as MSTNA." Defs.' Reply, DN 116, p. 2. Although MSTNA concedes that Noble would be qualified to testify about trust and estate taxation, it claims that he is unqualified to offer opinions regarding MSTNA's fiduciary duties. Finally, MSTNA argues that Noble's experience as trustee is distinguishable from the qualifications required of a corporate trustee because "corporate trust officers must deal with the internal mechanics, policies and procedures of a large trust corporation . . . and the unique rules and regulations that apply to corporate trustees." *Id.* at p. 4.

The Court finds the Defendants' arguments against Noble unavailing. Based on the information presented, it appears to the Court that Noble is qualified by his education, knowledge, and experience. "Whether a proposed expert's experience is sufficient to qualify the expert to offer an opinion on a particular subject depends on the nature and extent of that experience." *U.S. v. Cunningham*, 679 F.3d 355, 379 (6th Cir. 2012) (citations omitted). Noble's qualification derives from a number of sources. First, while employed by Florida National Bank, Noble helped oversee the administration of trusts and estates of the bank's clients. This required him to have knowledge of a trustee's fiduciary obligations in order to review and advise trust officers regarding their obligations toward particular trusts and estates. Second, as a CPA, he has advised clients serving in a fiduciary capacity as trustees. Absent his knowledge and experience with trust administration, he would be incapable of providing these clients with reliable advice. Finally, and perhaps most importantly, Noble, himself, has served as the trustee of a number of trusts. In these roles, he directly applied his knowledge and experience to ensure that the assets were maintained, grown, or distributed in accordance with the governing instruments. As a trustee, he applies the principles and procedures he advises his

clients to follow.

MSTNA attempts to distinguish Noble's experience as a trustee on personal accounts from its role as a corporate trustee, arguing that there are "unique rules and regulations that apply to corporate trustees." But in making this argument, MSTNA does not point to or describe any of these "unique" rules or how they differ from the rules that Noble would follow as a personal trustee. Even if the rules and regulations constraining a corporate trustee are different, MSTNA does not argue that its fiduciary obligations vary from those that Noble must also follow as a personal trustee. By way of example, Noble opines that MSTNA breached its duty to preserve and protect the assets of the SLS Trust. *See* Noble Expert Report, DN 90-2, pp. 14-16. This is a duty shared by all trustees no matter their corporate or personal nature. MSTNA has simply not shown how Noble's experience as a personal trustee would disqualify him from rendering an opinion regarding MSTNA's actions as a corporate trustee.

To the extent that Noble has never served as a corporate trust officer or worked in a corporate trust company, the Court finds that this goes to the weight the trier of fact may give to his testimony and not his qualifications to offer it. Noble may have more experience assessing a trust's tax burden than does he applying the fiduciary obligations of a trustee. Again, this difference may be highlighted on cross-examination to attack his credibility, but it does not disqualify him from offering opinions altogether.

### B. Qualifications of Homer Parrent

Homer Parrent is an attorney from Louisville, Kentucky, who practices in the area of wills, trusts and estates, and probate matters. He has practiced in these areas for more than forty years. Parrent Aff., DN 113-5, ¶ 3. In 1991, he became a Fellow of the American College of Trust and Estate Counsel ("ACTEC") and currently serves as a member of that organization's

fiduciary litigation committee.  Parrent Expert Report, DN 90-3, p. 6.  Parrent has authored articles and publications on probate and estate topics and has litigated a number of cases in this area.  *Id.* at pp. 6-7.  Although he has "never been an employee of a trust company or served as a trust officer," he claims that "a large percentage of his practice has been devoted to estate and trust administration," during which he has served as an executor or trustee or has "litigated matters involving breaches of fiduciary duties by attorneys-in-fact, executors, trustees and other fiduciaries under Kentucky law."  Parrent Aff., DN 113-5, ¶ 3.  Finally, Parrent "represents . . . a large number of corporate trustees both in connection with the management and administration of estates as well in connection with litigation relating to the appropriate execution of trusts by corporate trustees."  *Id.* ¶ 6.

Much like their attack on the Plaintiff's other expert, the Defendants claim that Parrent is unqualified.  Although they concede that Parrent "is undoubtedly experienced in certain areas of trust and estates law," they claim that he is unqualified because he "practices primarily in the niche area of estate probate and will contests."  Def.'s Reply, DN 116, p. 5.  They further claim that Parrent is unqualified to offer opinions in this case because he "has no demonstrated experience as a trustee or trust officer, no experience administering or managing a trust, and no experience working for a trust company."  *Id.*  In all, the Defendants do not dispute that Parrent is an expert in some areas.  Instead, they claim that his expertise does not fit the disputed areas of the law in this case and that his experience is not sufficiently "extensive and specialized" to qualify him as an expert.

The Court disagrees with the Defendants' contentions because it appears that that Parrent is qualified by his knowledge, experience, and education.  The Defendants place heavy emphasis on the fact that Parrent has never personally served as a corporate trustee or been a

9

trust officer for a trust company like MSTNA. The Defendants' narrow focus on the positions that Parrent has not held ignores the experience and expertise he has gained during forty years of legal practice. As pointed out by the Plaintiff, Parrent has litigated a number of will contests alleging *inter vivos* breaches of fiduciary duties and claims that beneficiaries have acquired a will by undue influence. In the present case, the Plaintiff alleges that the Defendants breached a number of fiduciary duties and that Craig unduly influence Sara, causing her to appoint him attorney-in-fact over her affairs and to alter the SLS Trust to his benefit. Although Parrent has never served as a corporate trustee or trust officer, he has forty years of experience litigating claims that are substantially similar to those asserted in the present action. And while not personally serving as a corporate trustee, he has represented corporate trustees during his career. Parrent appears to be qualified by his knowledge and experience to offer his proffered opinions.

To the extent that Parrent has not served as a corporate trustee or trust officer, the Defendants may attack his credibility on cross-examination, but given his experience in the probate and trusts and estates practice areas, he appears to be qualified to offer opinions in this case.

## V.

The Defendants next assert that even if the experts are qualified the opinions in their reports are stated in the form of inadmissible legal conclusions. Although there may be some partial merit to the Defendants' argument, the Court declines to reach its substance until the proposed experts are deposed. Whether an opinion is stated in the form of a legal conclusion often depends on the manner in which the opinion is presented. The experts' depositions will more fully develop the substance of their proposed testimony. The Defendants may renew their motion on this issue after the depositions if they find it necessary to do so.

A. **Rule 704 and Opinions Reaching the Ultimate Issue**

The Defendants object to the opinions offered by the Plaintiff's experts on grounds that they are inadmissible legal conclusions that would not aid the trier of fact. The admissibility of opinions stated in the form of legal conclusions that reach the ultimate issue to be decided is governed by Federal Rule of Evidence 704.

Subject to an exception not applicable here, Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Rule 704 abolished the "ultimate issue" rule, which prohibited witnesses from offering opinions as to the ultimate issue to be adjudicated in a case. *See* Fed. R. Evid. 704 (advisory committee notes). Although it eliminated the prohibition, Rule 704 did "not lower the bars so as to admit all opinions. Under rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time." *Id.* In the absence of a bar against ultimate issue opinions, Rules 701, 702, and 403 provide "ample assurances against the admission of opinions which would merely tell the jury what result to reach." *Id.*

"[O]pinions that merely tell the trier of fact what result to reach or state a legal conclusion in a way that says nothing about the facts are . . . objectionable . . . because such opinions are not 'helpful' as required by Rule 701 and do not 'assist' as required by Rule 702." 29 Charles Alan Wright, *et al.*, *Federal Practice & Procedure*, § 6282 (1st ed. 2012). "Although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual one." *Berry v. City of Detroit,* 25 F .3d 1342, 1353 (6th Cir.1994) (internal quotation and citation omitted). "When the rules speak of an expert's testimony embracing the ultimate issue, the reference must be to stating opinions that suggest the answer to the ultimate issue or that give the jury all the information from which it can draw inferences as to

the ultimate issue." *Id.*

"An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid–State Fertilizer Co. v. Exchange Nat'l Bank,* 877 F.2d 1333, 1339 (7th Cir.1989). "[Rule 704] permits a witness to testify in the form of an opinion or inference to an ultimate issue to be decided by the trier of fact. However, it is not for the witness to instruct the jury as to the applicable principles of law, but for the judge." *Shahid v. City of Detroit*, 889 F.3d 1543, 1548 (6th Cir. 1989) (citations omitted).

Whether an expert's testimony embraces an improper legal conclusion often turns on the phrasing of the question posed. The commentary to Rule 704 provides a widely recognized example of the distinction in the context of a will contest:

> [T]he question, 'Did T have capacity to make a will?' would be excluded, while the question, "Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed.

Rule 704 (advisory committee notes). One calls for a legal conclusion, while the other seeks an answer based on fact. Accordingly, "where the 'ultimate issues of fact' in a case track closely with 'legal conclusions," an expert's opinion may often be rendered admissible or inadmissible by a mere change in phrasing." *Hobbs v. Legg Mason Inv. Counsel & Trust Co., N.A.*, No. 3:09-CV-9-SA-DAS, 2011 WL 304421, at *5 (N.D. Miss. Jan. 25, 2011).

### A. Opinions of W. Greg Noble

The Defendants object to Noble's opinion that they breached certain fiduciary duties in the administration of the SLS Trust and should be held liable for any resulting loss. They claim that Noble's repeated references to "breach", "duty," and "liability" state legal conclusions that are not helpful to the trier of fact and usurp the Court's role to instruct the jury on the law to be applied to the facts.

Upon review, some portions of Noble's expert report, taken in isolation, may contain inadmissible legal conclusions. In the summary section of his report, Noble opines that "[the Defendants] breached the following fiduciary duties" and then lists ten distinct fiduciary duties. *See* Noble Expert Report, DN 90-2, p. 17. The Defendants point to this list as but one example of impermissible legal conclusions in Noble's report. The Defendants' argument appears to overlook Noble's reference to deposition testimony, emails between the Defendants, MSTNA's business records, and other documentary evidence throughout his report. While it would be improper for Noble to simply testify that the Defendant breached certain fiduciary duties as stated in the summary section of his report, the admissibility of his opinions will largely turn on the phrasing of the questions posed to him and the responses given. *See Ferris v. Tenn. Log Homes, Inc.*, No. 4:06-CV-35-M, 2010 WL 996737, at *1-2 (W.D. Ky. Mar.16, 2010) (excluding impermissible legal conclusions but finding that similar testimony would be admissible if the questions were carefully phrased); *Torres v. City of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) ("[A] more carefully phrased question could have elicited similar information and avoided the problem of testimony containing a legal conclusion."). Accordingly, the Court denies the Defendants' motion with respect to Noble at this time so that the substance of his opinions may be more fully develop through deposition testimony. After Noble is deposed, the Court will be better able to determine whether he offers opinions in the form of inadmissible legal conclusions.

### B. Opinions of Home Parrent

The Defendants object to Parrent's expert report on the same or substantially similar grounds raised in their arguments against Noble. In particular, MSTNA objects to those portions of Parrent's report that state that MSTNA breached several fiduciary duties by acquiescing to and not prohibiting Craig from carrying out actions that were contrary to the SLS Trust. Much

like Noble's opinions, some of the opinions contained in Parrent's report may be in the form of inadmissible legal conclusions that may be cured by carefully phrased questions and responses. The Court denies the Defendants' motion with respect to Parrent at this time so that his opinions may be more fully developed through deposition testimony. After his deposition, the Court will be more fully able to determine whether his opinions are offered in the form of inadmissible legal conclusions.

## VI.

Finally, the Defendants argue that portions of Parrent's opinions should be excluded because he interprets legal documents that many only be interpreted by the Court. In retaining Parrent as an expert, the Plaintiff asked him to determine "[w]hether Craig Williamson, in his capacity as Attorney-in-Fact for Ms. Sutherland, or as Co-Trustee, or both, had the authority to direct Morgan Stanley in the disbursement of funds from Mrs. Sutherland's trust." Parrent Expert Report, DN 90-3, p. 3. After reviewing the various Powers of Attorney in this case, Parrent concluded that the "Attorney in Fact did not grant [Craig] any additional powers, above his status as Co-Trustee, to compel the withdrawal or payment of funds from the trust." *Id.* Rather, the "Powers of Attorney, properly construed, only authorized [Craig] to exercise authority over Ms. Sutherland's personal assets, as opposed to held in her trust." *Id.* at pp. 3-4.

Likewise, Parrent concluded that "none of Ms. Sutherland's trust documents authorized the trustees thereof to recognize and honor any instructions from [Craig], either individually or as her Attorney in Fact." *Id.* at p. 4. In all, Parrent opined that none of the instruments granted Craig the authority to "direct or instruct [MSTNA] on how to administered and distribute the trust assets[.]" *Id.* Because MSTNA followed Craig's directions regarding the assets of the SLS Trust even though he had no authority to issue those commands, Parrent concluded that MSTNA,

14

as a co-trustee, can be found liable for any losses sustained by the trust. *Id.*

The Sixth Circuit has held that "'[a]bsent any need to clarify or define terms of art, science, or trade, expert opinion testimony to interpret contract language is inadmissible.'" *N. Am. Specialty Ins. v. Myers*, 111 F.3d 1273, 1281 (6th Cir. 1997) (quoting *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 549 (6th Cir. 1981)); *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 425 n.4 (6th Cir. 2001) ("[T]he construction of unambiguous contract terms is strictly a judicial function; the opinions of percipient or expert witnesses regarding the meaning(s) of contractual provisions are irrelevant and hence inadmissible.").

Although the various Powers of Attorney and trust instruments were attached the Plaintiff's response, neither party has pointed the Court to any specific terms or provisions interpreted by Parrent. Absent more specificity about the terms interpreted by Parrent, the Court is not in a position to determine whether he was offering an interpretation of terms that would assist the trier of fact to understand the evidence or determine a fact in issue or whether he was interpreting an unambiguous provision left solely to the discretion of the Court. For this reason, the Court declines to reach the merits of the Defendants' argument at this time. Parrent's deposition testimony on this issue will reveal the provisions of the Powers of Attorney and trust instruments he interpreted in forming his opinion.

## CONCLUSION

The Defendants moved to exclude the Plaintiff's experts pursuant to Federal Rule of Evidence 702. For all of the foregoing reasons, the Defendants' motion is **DENIED** with leave to re-file after the Plaintiffs' experts are deposed. Any future motion should address the specific concerns raise by the Court in this opinion.