UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:10-CV-00079-TBR

CONCHI SIERRA                                                             Plaintiff

v.

CRAIG WILLIAMSON, *et al.*                                         Defendants

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiff Conchi Sierra's "Motion in Limine for Ruling that Florida Law Applies to Determine the Validity of the Purported 'Fifth Amendment to Amended and Restated Sara Loving Sutherland Revocable Trust Agreement' and the Purported 'Amended and Restated Sara Loving Sutherland Revocable Trust Dated May 1, 2006.'" (Docket No. 131.) Defendant Morgan Stanley Trust National Association (Morgan Stanley) and Defendant Craig Williamson have each responded, (Docket Nos. 144 & 143, respectively), and Plaintiff has replied, (Docket No. 148). This matter is now ripe for adjudication. For the reasons that follow, Plaintiff's Motion will be DENIED.

BACKGROUND

This case involves a dispute over the revocable trust of the late Sara Loving Sutherland between several factions of Sutherland's family with competing expectancy interests in the trust. Plaintiff alleges, among other things, that Sutherland was not competent to execute certain trust revisions and powers of attorney; that Williamson, who was Sutherland's nephew and cotrustee of the trust, breached his fiduciary duty by

unduly influencing Sutherland; and that Morgan Stanley, who was the corporate cotrustee of the trust, is liable for breaching its fiduciary duties to the trust. Because many of the facts of this case remain contentious, the Court will limit its recitation here to only those facts necessary to adjudicate Plaintiff's instant Motion.

Sutherland created and executed the "Sarah Loving Sutherland Revocable Trust" (the "1991 Trust") on April 25, 1991. Sutherland was the 1991 Trust's grantor, trustee, and income beneficiary. Between 1991 and 2006, Sutherland amended and/or restated the 1991 Trust a total of ten times. After three amendments had been made to the 1991 Trust, Sutherland executed the "Amended and Restated Sara Loving Sutherland Revocable Trust" (the "1997 Restated Trust") on May 15, 1997. The 1997 Restated Trust was then amended five times between 1997 and 2004. Primarily at issue here, for purposes of Plaintiff's instant Motion, are the December 22, 2004, "Fifth Amendment to Amended and Restated Sara Loving Sutherland Revocable Trust Agreement" (the "2004 Fifth Amendment") and the May 1, 2006, "Amended and Restated Sara Loving Sutherland Revocable Trust" (the "2006 Restated Trust").

Sutherland owned property in Florida where she lived until 2005. The 1991 Trust was created while Sutherland lived in Florida and was managed by a Morgan Stanley office in Florida. Sutherland relocated to Kentucky in 2005 and lived in Kentucky for approximately five years until her death in 2010. The 2004 Fifth Amendment and 2006 Restated Trust were drafted in Kentucky by a Kentucky attorney, whereas each of the previous amendments and restatements had been drafted in Florida by a Florida attorney. The 2004 Fifth Amendment and 2006 Restated Trust were both executed in Kentucky and witnessed in Kentucky by Kentucky residents. A number of

the beneficiaries are, or were, residents of Kentucky at the time of Sutherland's death; no beneficiaries are residents of Florida.  Additionally, Plaintiff alleges in her Second Amended Complaint that "[m]uch of the tortious conduct of undue influence complained of in this action occurred in Daviess County, Kentucky, and the witnesses available to corroborate the tortious conduct and Mrs. Sutherland's lack of testamentary capacity reside in Daviess County, Kentucky."  (Docket No. 119, at 8.)   After Sutherland's death, the 1991 Trust, the 2004 Fifth Amendment, and the 2006 Restated Trust were filed for registration with the probate clerk of Daviess District Court in Owensboro, Kentucky. This action was originally filed in Daviess Circuit Court before being removed to this Court on the basis of diversity jurisdiction.

## DISCUSSION

Plaintiff now moves the Court for a ruling that Florida law applies to determine the validity of the 2004 Fifth Amendment and the 2006 Restated Trust.  (Docket No. 131.)  Defendants argue in opposition that Kentucky law should apply to these issues, as well as to each of Plaintiff's claims against them.  (*See* Docket Nos. 143 & 144.)  The Court need only conduct a choice-of-law analysis if a conflict exists between two states' laws. *Asher v. Unarco Material Handling, Inc.*, 737 F. Supp. 2d 662, 667-68 (E.D. Ky. 2010) (citing *Williams v. Toys "R" Us*, 138 F. App'x 798, 803 (6th Cir. 2005)). Principally at issue here are the Plaintiff's claims of undue influence and lack of capacity relative to the 2004 Fifth Amendment and 2006 Restated Trust.  It appears that a conflict exists between Kentucky and Florida relative to the applicable standard for determining mental capacity.  It also appears that Kentucky law and Florida law conflict as to whether there is a presumption of undue influence. Accordingly, the Court is

satisfied that a conflict exists between the two states' laws and so will proceed to analyze which law is applicable to this dispute.

## I.     Kentucky's Choice-of-Law Rules

Federal courts hearing cases based on diversity must determine which state's law to apply to the case.  This begins with an analysis of the choice-of-law rules of the forum state, Kentucky.     *E.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, (1941); *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000).   The applicable choice-of-law rule depends upon the classification of a claim as either sounding in tort or in contract.  This distinction is important because Kentucky courts utilize separate tests for cases arising in tort and cases arising in contract.  *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009).

The Court notes at the outset that Kentucky courts "are very egocentric or protective concerning choice of law questions."  *Paine v. La Quinta Motor Inns, Inc.*, 736 S.W.2d 355, 357 (Ky. Ct. App. 1987), *overruled on other grounds by Oliver v. Shultz*, 885 S.W.2d 699 (Ky. 1994).  That is, there is a strong preference in Kentucky for applying Kentucky law.  This "provincial tendency" has been recognized routinely by the Sixth Circuit when applying Kentucky's choice-of-law rules.  *See, e.g.*, *Wallace Hardware*, 223 F.3d at 391 ("On at least two occasions, we likewise have noted this provincial tendency in Kentucky choice-of-law rules."); *Adam v. J.B. Hunt Transp., Inc.*, 130 F.3d 219, 230 (6th Cir. 1997) (noting that "Kentucky does take the position that when a Kentucky court has jurisdiction over the parties, '[the court's] primary responsibility is to follow its own substantive law.'" (alteration in original) (quoting *Foster v. Leggett*, 484 S.W.2d 827, 829 (Ky. 1972))); *Johnson v. S.O.S. Transp., Inc.*,

926 F.2d 516, 519 n.6 (6th Cir. 1991) ("Kentucky's conflict of law rules favor the application of its own law whenever it can be justified."); *Harris Corp. v. Comair, Inc.*, 712 F.2d 1069, 1071 (6th Cir. 1983) ("Kentucky courts have apparently applied Kentucky substantive law *whenever possible*. . . . [I]t is apparent that Kentucky applies its own law unless there are overwhelming interests to the contrary." (emphasis in original) (discussing *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717 (Ky. 1982))).

### A.       Claims sounding in contract

Where a choice-of-law issue arises in a contract dispute, the Kentucky Supreme Court twice recently affirmed the applicability of the "most significant relationship" test articulated in § 188 of the *Restatement (Second) of Conflict of Laws* (1971).[1] *Schnuerle v. Insight Commc'ns Co.*, 376 S.W.3d 561, 566-67 (Ky. 2012); *Saleba*, 300 S.W.3d at 181.    Prior to the Kentucky Court's 2012 decision in *Schnuerle v. Insight Communications Co.*, the Sixth Circuit had predicted that Kentucky courts would apply

---

[1] Section 188, which is titled "Law Governing in Absence of Effective Choice by the Parties," states, in relevant part:

(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties . . . .

(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account . . . to determine the law applicable to an issue include:

    (a) the place of contracting,
    (b) the place of negotiation of the contract,
    (c) the place of performance,
    (d) the location of the subject matter of the contract, and
    (e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

§ 187 of the *Restatement* [2] where a contractual choice-of-law clause was present. *Wallace Hardware*, 223 F.3d at 397-98.   In a detailed decision, the Sixth Circuit, in *Wallace Hardware*, found error in the district court's application of § 188's most-significant-relationship test where a choice-of-law clause was set forth in the contract underlying the parties' dispute.   *Id.* at 393.   After discussing the Kentucky Supreme Court's 1982 decision in *Breeding v. Massachusetts Indemnity & Life Insurance Co.*, the decision in which the Kentucky Court adopted § 188's most-significant-relationship test, the Sixth Circuit remarked:

> Notably, the *Breeding* Court did not apply, nor even mention, § 187 of the Restatement, which specifically addresses contractual choice-of-law provisions. At a minimum, then, *Breeding* indicates that the Kentucky courts will not automatically honor a choice-of-law provision, to the exclusion of all other considerations. Rather, despite a choice-of-law clause in the accidental death policy, the *Breeding* Court weighed the relative interests of Kentucky and Delaware in deciding which law to apply. Further, in making this determination, the Court gave virtually no weight to the choice-of-law provision.

---

[2] Section 187, which is titled "Law of the State Chosen by the Parties," states, in relevant part:

(1)  The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2)  The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a)  the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b)  application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 393.  However, the court of appeals went on to reason, "[W]e do not believe that *Breeding* can be construed as broadly precluding parties from making a reasonable and binding choice as to the law that will govern their contractual relationship."  *Id.*  Thus, despite "not[ing] the tendency of Kentucky courts to apply their own law, even when a contractual provision might state otherwise," the Sixth Circuit ultimately predicted that Kentucky would apply § 187 rather than § 188 when faced with a contractual choice-of-law provision:

> In short, we find no clear signposts in the prior decisional law. Nevertheless, we conclude that, in a standard commercial breach-of-contract case such as we have here, the Kentucky courts would choose to adopt § 187 of the Restatement as their analytical framework for addressing a contractual choice-of-law clause. Initially, we note that *Breeding* itself lends considerable support to this conclusion. While the Kentucky Supreme Court did not cite § 187 in that decision . . . we view *Breeding* as employing a § 187 analysis, albeit only implicitly.
> . . . .
> . . . We see no basis for concluding that § 187 is somehow disfavored by the courts of that state; rather, the more logical conclusion to be drawn from the case law is that the proper occasion has not yet arisen for adopting that provision. Simply stated, we believe we are confronted with such circumstances here. Thus, while we acknowledge that we are writing on something of a blank slate, we find that § 187 of the Restatement sets forth the appropriate standards for determining whether to enforce the [instant contractual choice-of-law-provision].

*Id.* at 397-98.

Recent decisions by Kentucky's highest court have shown this prediction to be mistaken and, instead, have affirmed the application of § 188's most-significant-relationship test, even where the parties have expressly agreed to have their contractual rights and duties governed by a particular state's laws.  In its 2009 decision in *Saleba v.*

*Schrand*, the Kentucky Supreme Court made no distinction between contractual disputes where the underlying contract contained an explicit choice-of-law clause and those that did not, stating:  "First and foremost, Kentucky has consistently applied § 188 of the *Restatement (Second) of Conflict of Laws* to resolve choice of law issues that arise in *contract* disputes."   300 S.W.3d at 181 (emphasis in original).  But there was no express choice-of-law provision at issue in *Saleba*, and the Kentucky Court ultimately found that the underlying dispute (which dealt with the discoverability of allegedly privileged communications) was neither a tort nor a contract issue.  *Id.* However, that Court's subsequent 2012 decision in *Schnuerle* makes clear Kentucky's position as to which analytic framework, § 187 or § 188, is appropriate in instances where the underlying contract contains a choice-of-law provision.

*Schnuerle* dealt with a service agreement that contained an arbitration clause that contained an express choice-of-law provision designating that the law of New York would apply to the construction, interpretation, and enforcement of that agreement.  376 S.W.3d at 566.  Relying on *Breeding*, the Jefferson Circuit Court declined to apply the choice-of-law provision and, instead, applied Kentucky law to determine whether the arbitration clause was enforceable.   The Kentucky Court of Appeals, without specifically addressing the choice-of-law issue, also applied Kentucky law, thereby implicitly affirming the circuit court on this point.   On discretionary review, the Kentucky Supreme Court affirmed the circuit court's reliance on *Breeding* and its application of § 188's most-significant-relationship test:  "The *Breeding* decision held that Kentucky law should apply because Kentucky had the greater interest in, and the most significant relationship to, the transaction and the parties.  Upon application of

*Breeding,* we agree with the circuit court's conclusion that Kentucky law governs our evaluation of the Service Agreement." *Id.* at 566-67.  Then, after applying several of the factors outlined in § 188(2), the Kentucky Court concluded that "there can be no doubt that Kentucky has 'the greater interest and the most significant relationship to the transaction and the parties.'" *Id.* at 567.  The Kentucky Court made no mention of § 187; instead, focused its entire discussion on relative interests of Kentucky and New York, apparently affording no weight to the parties' contractual choice-of-law provision. *See id.*

Therefore, while the Court sees the Sixth Circuit's logic in predicting that Kentucky courts would adopt § 187, in light of these recent decisions by Kentucky's highest court, the Court will decline to follow that prediction and, in accordance with *Schnuerle*, instead apply § 188's most-significant-relationship test to any and all of Plaintiff's claims that sound in contract.

### B.  Claims sounding in tort

Where a choice-of-law issue arises in a tort action, Kentucky courts apply the "any significant contacts" test. *E.g.*, *Saleba*, 300 S.W.3d at 181; *Adam*, 130 F.3d at 230.  Under this test, "any significant contact with Kentucky [is] sufficient to allow Kentucky law to be applied." *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996); *see also Foster*, 484 S.W.2d at 827; *Arnett v. Thompson*, 433 S.W.2d 109 (Ky. 1968); *Wessling v. Paris*, 417 S.W.2d 259 (Ky. 1967).  Unlike claims sounding in contract, choice-of-law questions regarding tort claims "should not be determined on the basis of a weighing of interests, but simply on the basis of whether

Kentucky has enough contacts to justify applying Kentucky law." *Arnett*, 433 S.W.2d at 113; *see also Adam*, 130 F.3d at 230.

## II.    Application of Kentucky's Choice-of-Law Rules to Plaintiff's Claims

As an initial matter, the Court notes that while the bulk of Plaintiff's claims unquestionably sound in tort, the principal claims at issue for purposes of her instant Motion—*i.e.*, lack of capacity and undue influence—do not lend themselves to such clear and certain characterization as sounding in either tort or contract.   Undue influence, perhaps, more clearly sounds in tort, but Plaintiff's lack of capacity claim is less clear.   Both lack of capacity and undue influence, in effect, are defenses to the enforcement of an express contract.[3]   Although Plaintiff's undue influence claim is technically based on a trust instrument, the alleged acts that form the basis of that claim do not involve the interpretation of the terms of that instrument.   Instead, her undue influence claim focuses entirely on the alleged tortious acts of others.   By comparison, the question whether Sutherland lacked capacity does not concern itself with any tortious conduct, nor does Plaintiff's lack of capacity claim require any such conduct. Still, the issue of capacity falls outside the four corners of the Trust itself—that is, it neither implicates a rule of contract interpretation nor involves the interpretation of the

---

[3] It seems clear that, under Kentucky law, lack of capacity renders a contact voidable whereas undue influence renders a contract void.   *Compare Hagemeyer v. First Nat'l Bank & Trust Co.*, 209 S.W.2d 320, 321 (Ky. 1948) (holding, in the context of whether a grantor had sufficient capacity to execute a trust agreement, that "A contract executed by one who is actually of unsound mind is not void but only voidable . . . the true test is the person's capacity to understand and assent to the particular transaction."), *and Revlett v. Revlett*, 118 S.W.2d 150, 154 (Ky. 1938) ("The deed of an insane man is not void.   It is only voidable."), *with Stege v. Stege's Tr.*, 35 S.W.2d 324, 325 (Ky. 1930) ("[I]f an assent is given by reason of undue influence—a species of fraud which the courts do not undertake to define with precision—it will be considered as if it had never been given, and the instrument will be held ineffectual and void."), *and Lane v. Taylor*, 152 S.W.2d 271, at 275 (Ky. Ct. App. 1941) (acknowledging that a trust conveyance may "be held void, because of . . . undue influence").   *See generally Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 909-10 (6th Cir. 1993) (discussing the distinction between the meanings of "void" and "voidable").

Trust's terms.   Regardless, the Court reaches the same conclusion whether the choice-of-law rule for contract claims or for tort claims is applied to these issues: that Kentucky law should apply to all of Plaintiff's claims.

> **A.**   **Kentucky has "significant contacts" relative to Plaintiff's claims sounding in tort.**

It is clear to the Court that Kentucky has significant contacts relative to Plaintiff's tort claims.  Sutherland lived in Kentucky for the final five years of her life.  Sutherland's will is now in probate in Daviess District Court in Owensboro, Kentucky.  Plaintiff initially filed this action in Daviess Circuit Court.  Many of the documents in question were drafted and executed in Kentucky, and several of the beneficiaries of the contested trust documents and of the gifts made under the contested powers of attorney are, or were at the pertinent time, Kentucky residents.  Moreover, Plaintiff's Second Amended Complaint concedes that "[m]uch of the tortious conduct of undue influence complained of in this action occurred in Daviess County, Kentucky."  (Docket No. 119, at 8.)  Thus, the Court finds that Kentucky has significant contacts to Plaintiff's tort claims in Count 1 and Counts 4 through 14.   Further, to the extent Plaintiff's claims of lack of capacity and undue influence in Counts 2 and 3 sound in tort, the Court finds that Kentucky has significant contacts to these claims as well.  Accordingly, the Court will apply Kentucky law to Plaintiff's tort claims.

> **B.**   **Kentucky has the "most significant relationship" relative to Plaintiff's claims sounding in contract.**

It is also clear to the Court that Kentucky has the most significant relationship to the 2004 Fifth Amendment and 2006 Restated Trust.  Under the framework of § 188 of the *Restatement*, the Court must consider which state has the most significant

relationship to the transaction and the parties under the principles stated in § 6 and the contacts outlined in § 188(2).  The § 188(2) factors to be considered are:  (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation, and place of business of the parties.  Underlying the factors in § 188(2) are the principles enumerated in § 6(2), which include:  (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.  When using this framework, the Court "must balance principles, policies, factors, weights, and emphases to reach a result, the derivation of which, in all honesty, does not proceed with mathematical precision."  *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606 (6th Cir. 1996).  In this vein, the Sixth Circuit has noted that "even when sections 6 and 188 are read together, it is clear they only provide a broad general framework for the resolution of choice of law issues in the context of a contract dispute."  *Id.*  The "key" to the Court's analysis, the Sixth Circuit advises, "is that the choice of law principles found in the Restatement need not be given equal weight in every circumstance, nor are they intended to be exclusive. They also are relatively elastic, and in some cases equivocal." *Id.*

Certainly, Florida has an interest in this action.  Sutherland owned real estate in Florida, and the 1991 Trust was created in Florida and managed by Morgan Stanley's

office in Florida.  A review of Florida law pertaining to the issues of capacity and undue influence suggests that Florida, as a retirement destination for many of its residents, has a definite policy interest in protecting its aging residents from fraud or exploitation. However, these interests do not amount to Florida having the "most significant relationship" to either the 2004 Fifth Amendment or the 2006 Restated Trust.

Kentucky, on the other hand, does have the most significant relationship to the parties and the transactions here.  Sutherland, the grantor and primary beneficiary of the Trust during her lifetime, resided and kept her domicile in Kentucky during the final five years of her life.  Thus, at all times relevant to the issues of capacity and undue influence, Sutherland resided in Kentucky.[4] Both the 2004 Fifth Amendment and 2006 Restated Trust were drafted in Kentucky by a Kentucky attorney, executed in Kentucky, and witnessed in Kentucky by Kentucky residents.  A number of the beneficiaries of the 2004 Fifth Amendment and 2006 Restated Trust (and Defendants in this case) are, or were, Kentucky residents, whereas neither Plaintiff nor any of the other beneficiaries of the Trust are Florida residents.  Sutherland's estate is now in probate in a Kentucky court.  And, as mentioned above, Plaintiff has acknowledged that "[m]uch of the tortious conduct of undue influence complained of in this action occurred in Daviess County, Kentucky, and the witnesses available to corroborate the tortious conduct and Mrs. Sutherland's lack of testamentary capacity reside in Daviess County, Kentucky." (Docket No. 119, at 8.)

The remaining Restatement factors do not weigh heavily in determining the relative interests between Kentucky and Florida because they are either inapplicable or

---

[4] Plaintiff concedes as much in her Amended Complaint, stating: "Mrs. Sutherland was a patient in a nursing home for the final five (5) years of her life and died in Owensboro, Daviess County, Kentucky." (*See* Docket No. 119, at 8.)

indeterminate here. Kentucky has significant contacts and the most significant relationship to this dispute, and Florida's comparative interest is not sufficient to displace the presumption of applying Kentucky law. Accordingly, to the extent Plaintiff's claims of either lack of capacity or undue influence sound in contract, the Court finds that Kentucky law should apply.

> **C.** **Consideration of the choice-of-law clauses in the several versions of Sutherland's Trust does not alter the conclusion that Kentucky law should apply.**

As noted above, Sutherland's 1991 Trust and 1997 Restated Trust contained a choice-of-law provision providing that Florida law should govern the validity, interpretation, and administration of the Trust. That provision remained unchanged through the 2004 Fifth Amendment. The 2006 Restated Trust, however, changed the choice of law applicable to the Trust to that of Kentucky. Plaintiff seems to argue that even if the Court finds that Kentucky law applies to the 2006 Restated Trust, the Court nonetheless should find that Florida law applies to the 2004 Fifth Amendment. The Court disagrees. The 2006 Restated Trust consolidated and restated the 1997 Restated Trust and its five amendments, which includes the 2004 Fifth Amendment. Until the Court determines otherwise, the 2006 Restated Trust is presumed to have been properly executed and therefore valid; it is immaterial at this juncture what the previous versions of Sutherland's Trust provided regarding choice of law. Accordingly, to the extent any weight must be given to a contractual choice-of-law provision in this matter, it must be given to the 2006 Restated Trust's provision providing for Kentucky law.

CONCLUSION

Therefore, having considered the parties' respective arguments and being otherwise sufficiently advised, consistent with the foregoing discussion;

IT IS HEREBY ORDERED that Plaintiff's "Motion in Limine for Ruling that Florida Law Applies to Determine the Validity of the Purported 'Fifth Amendment to Amended and Restated Sara Loving Sutherland Revocable Trust Agreement' and the Purported 'Amended and Restated Sara Loving Sutherland Revocable Trust Dated May 1, 2006,'" (Docket No. 131), is DENIED.  Kentucky law shall apply to all of Plaintiff's claims in this matter.

IT IS SO ORDERED.

Date:


cc:      Counsel